CHOCTAW, OKLAHOMA & GULF RAILROAD COMPANY *v.* CRAIG.

Opinion delivered May 14, 1906.

1. RAILROAD—DANGEROUS COUPLING—NEGLIGENCE.—Where a brakeman was injured while endeavoring to make a coupling of an engine to a car, which was unusually dangerous, owing to the difference in their height, a finding that the railway company was negligent in not providing a safe method of making the coupling will be sustained. (Page 56.)

2. MASTER AND SERVANT—ASSUMED RISK—QUESTION FOR JURY.—Where a risk incurred by a servant was not one of the ordinary risks of the employment, but arose from the master's negligence, to establish that the risk was one assumed by the servant it must appear affirmatively that the latter subjected himself to the extraordinary danger with a full knowledge and appreciation; and where the minds of intelligent men might draw different conclusions, the question whether the risk was assumed was properly left to the jury to determine. (Page 56.)

3. SAME—CONTRIBUTORY NEGLIGENCE.—A finding of the jury that a brakeman was not guilty of contributory negligence in attempting to make a coupling in a certain manner will be sustained by proof that he was working under the direction of a vice-principal, and that the coupling had twice on the same day been successfully made in the same manner. (Page 57.)

4. TRIAL—GIVING ADDITIONAL INSTRUCTION.—Where the jury came into court, and asked that the instructions be re-read, the giving of an additional and more complete instruction on the subject of contributory negligence is not an abuse of discretion, as unduly emphasizing that phase of the case. (Page 57.)

5. PERSONAL INJURIES—EXCESSIVENESS OF DAMAGES.—For the loss of two fingers on the right hand of a brakeman, who was 23 years of age, a verdict of $2,500 damages is not excessive. (Page 58.)

6. TRIAL—ARGUMENT—OBJECTION.—In an action against a railroad company to recover for personal injuries a statement by plaintiff's attorney that the defendant is a railroad corporation owning enough miles of railroad to reach across the government, and that it is able to lay a line of silver dollars as long as the road, edge to edge; that "this sum was not made by the president or secretary, sitting in their offices and private car, but was made by the sweat and blood of your sons and my sons," is not ground for new trial, if no timely objection was made to it. (Page 58.)

Appeal from Logan Circuit Court, Southern District; *Jeptha H. Evans,* Judge; affirmed.

*E. B. Peirce* and *T. S. Buzbee,* for appellant.

1. Under the rules established by this court, the evidence is insufficient to prove negligence on the part of appellant. 44 Ark. 529; 46 Ark. 567; 51 Ark. 467; 54 Ark. 395; 74 Ark. 19; 67 Ark. 295. Appellee assumed the risk. One who, knowing and appreciating the danger, enters upon a perilous work, even though he does so by order of his superior, must bear the risk. It is his duty to inform himself of the danger; and if he negligently fails to do so, he will still be held to have assumed them. 77 Ark. 367; 67 Ark. 306.

2. It was error on the part of the court, after the jury returned and requested that the instructions be repeated to them, to give them an additional instruction, on the subject of contributory negligence. Being given at a time when counsel could not explain it in argument, it had the effect of a final summing up of the law of the case, and of eliminating the question of assumed risk.

3. The verdict is excessive. It is in proof that appellee's earning capacity was not decreased, and that since the accident he has advanced to a higher position, and is receiving a higher salary than before.

4. The cause should be reversed because of improper argument of counsel, the effect of which was to arouse the passion and prejudice of the jury, and to lead them to award an excessive amount of damages. 74 Ark. 256; 74 Ark. 298.

*Randell & Wood, Wilkins, Beatty & Vinson* and *Robert J. White,* for appellee.

1. Appellee assumed only such risks as were ordinarily incident to the service in which he was engaged, and did not assume any risk caused by the negligence of appellant. 80 S. W. 79 and 1073. He was not bound to inspect, but had the right to assume that appellant had performed his duty, and that the coupling apparatus was reasonably safe, unless the danger was obvious. He must not only have known or observed the defect that caused the injury, but also have appreciated the danger. 81 S. W. 72; Wood on Master and Servant, § 376; 80 Tex. 85. See also 30 S. W. 758; 103 Fed. 265. The question of assumed risk was for the jury. 47 S. W. 311. If appellee did not discover the danger until at the very

time of his injury, he did not assume the risk.  50 S. W. 417; 91 Tex. 437.

2.  The court's charge on the subject of contributory negligence, at appellee's request, was in response to the issues raised by appellant, and the latter can not complain.

3.  Unless the verdict is so excessive as to show that it is the result of passion and prejudice, corruption or failure on the part of the jury to appreciate the law and the facts, it will not be disturbed.  58 Ark. 136 and cases cited.

4.  Appellant will not be heard to object here to argument of counsel, without having objected at the time the language complained of was used.  85 S. W. 428; 2 S. W. 505; 32 S. W. 497.

*E. B. Peirce* and *T. S. Buzbee,* for appellant in reply.

There is evidence that appellee did know of the existence of the particular defect, and of the danger arising therefrom; but if he did not, still the company was not bound to give him specific notice of defects:  78 Ark. 213, and cases cited.

HILL, C. J.  Craig was a brakeman in appellant's service on a freight train running from Hailyville to Ardmore, Indian Territory.  His train hauled a "dead engine," that is, one carried by the train, not by its own steam, and the engine was put in the train after 16 cars and was followed by eight cars.  There was difficulty with this engine at several stations.  This was known to Craig in a general way.  When the station of Olney was reached, the conductor told Craig that the engine had broken loose again, and told him to come and help to couple it, as he expected further trouble with it.  The engine and car to which it was coupled were equipped with automatic couplers, which were coupled by a lever at the side, so that the brakeman does not have to go between the cars to make a coupling.  The difficulty in this instance was that the coupler on the engine was about seven inches lower than the coupler on the car to which it must be attached, thereby preventing the knuckles of the couplers fastening.  This necessitated a link and pin coupling, and, owing to the difference in height of the couplers and the presence of the pilot of the engine in the space where the brakeman had to go to make the coupling, it was more dangerous than the usual pin and link coupling.

The other two brakemen of the train were placed between the engine and car with an iron bar to lift the lower coupler to

the height of the higher one, and Craig was directed by the conductor to then make a link and pin coupling. He attempted to do so, and in straining on the link to try to bring it to the level of the coupler the impact came, the coupling failed, and he was unable to get his hand out in time, and his fingers were cut off. A jury at Booneville gave him $2,500 damages.

The chief contention on the appeal is as to the sufficiency of the evidence.

1. As to the negligence of the company: The court, under proper instructions, left to the jury the determination of the question whether the company had used care and prudence in furnishing its employees a reasonably safe place to work and safe means and instruments to carry on its service. The engine was placed in this train at Hailyville, where it was made up, and where common prudence called for an inspection of the train and its condition before starting on the journey. Even a casual examination would have shown that the automatic coupler could not be used with this engine, and the link and pin coupler had to be resorted to. That these link and pin couplers are dangerous is a matter of common knowledge. Their thousands of victims moved Congress to forbid their use in interstate traffic. This was more dangerous than the usual link and pin coupler, owing to the difference in height of the couplers and the presence of the pilot in the space to be used by the brakeman in making this coupling. The jury were fully warranted in finding negligence in not providing a safe method of coupling the engine to the car and in placing the engine in a train where its coupler did not fit to the car next to it.

2. Does the evidence show this was a risk assumed by Craig? In the recent case of *Choctaw, O. & G. Rd. Co.* v. *Jones,* 77 Ark. 367, the subject of assumed risk was fully considered by the court. As therein shown, where the risk is not one of the ordinary risks of the employment, but is brought about by the negligence of the master, then there is no presumption that the risk is assumed. "The plea of the master that the servant assumed the risk is met in such a case by the answer that the danger arose from the master's own negligence, which is not one of the risks assumed by the servant. This being so, the master, to make good his defense of assumed risk, must go further, and show that the servant voluntarily subjected himself to the new danger

with a full knowledge and appreciation thereof, for such risk constitutes an addition to those ordinarily incident to the same, and there is no presumption that he had knowledge of or assumed it." This phase of the subject was the one pertinent here, and it was properly submitted to the jury under instructions in accord with the principles above quoted. The fact that the coupling had been made twice before on that trip, and the further fact that when Craig was ordered in to make the coupling the other two brakemen were prizing up the lower coupler to bring it to the proper level, presented an appearance to Craig that he was only assuming the danger which would be incident to such link and pin coupling when brought to a level. But the injury may fairly be inferred to have arisen, not from the mere fact of the nature of the coupling, but from the defect in not having the couplers of proper height, a defect not overcome by the efforts of the brakemen with the crowbar.

It can not be said, as a matter of law, that this situation presented to Craig "a full knowledge and appreciation" of the superadded risk. The situation then presented was one where the minds of intelligent men drew different conclusions, and such questions must be determined by a jury under appropriate instructions. *St. Louis, I. M. & S. Ry. Co.* v. *Luther Hitt*, 76 Ark. 224.

3. Was Craig guilty of contributory negligence? The difference between assumed risks and contributory negligence was fully explained in *Choctaw, O. & G. Rd. Co.* v. *Jones, supra;* and the court in this case submitted the question under proper instructions to the jury, and their finding is not without evidence to sustain it. The success of prior coupling presumably made in the same way would naturally lead Craig to rely upon the ability of his fellow workmen to overcome the defect by the use of the crowbar, and the master's direction to do the work would lend color to this belief; so that, under all the circumstances, the jury were fully justified in saying it was not contributory negligence to undertake to make this coupling.

4. After the jury had deliberated for a time, it returned into court, and asked that the instructions be read again. This was done, and then, at the request of plaintiff's counsel the court gave an additional instruction on the subject of contributory negligence. It is not contended that the instruction is *per se* erroneous,

but that, coming at the time it did, it caused emphasis to be laid upon a minor phase of the case, and led the jury away from the main defense of assumed risk. Such matters are mere speculation, and not subject to review here. The discretion of the trial judge must determine when additional instructions are needed to facilitate the jury in arriving at a proper verdict; and unless an abuse of such discretion, manifestly working prejudice, is shown, there is no cause for reversal. The question of contributory negligence was in the case, it was pleaded as a defense, an instruction asked upon it by the appellant, and in general terms instructed upon in the former instructions. Of course, it would have been better to have had the instructions complete, but the giving of a correct instruction at a later time is not of itself error.

5. The appellant alleges the verdict is excessive. The appellee lost two fingers of the right hand. He was engaged in work requiring the use of his hands, and he was a young man of 23 years of age. That the verdict of $2,500 is not excessive is too plain for further attention.

6. The last error assigned is this: "The case was thereupon argued to the jury, and during the closing argument of Robert J. White, attorney for plaintiff, he stated to the jury that the defendant is a railroad corporation owning enough miles of railroad to reach across the government, and it is able to lay a line of silver dollars as long as the road, laid edge to edge; that 'this money was not made by the president or secretary, sitting in their offices and private car, but was made by the sweat and blood of your sons and my sons.' Defendant did not object to this argument at the time, because an objection would not have removed the effect of it, and by so doing it would have prejudiced the jury against it and its defense."

The court is not reviewing the actions of the attorneys, but of the trial court. While it is primarily the duty of the trial judge to keep the argument within the record, and this he should do on his own initiative, and not wait for an objection, yet he may fairly assume, in the absence of objection, that counsel are acquiescing in an excursion without the record, and probably intending to meet such excursion with a similar trip. The appellant in its exception to the remarks made afterwards gives another reason for not objecting to the argument, but to sustain such practice would

be encouraging "masked batteries" which are opened on the trial judge in this court for the first time.   See review of authorities in *Kansas City So. Ry.* v. *Murphy,* 74 Ark. 256; *Day* v. *Ferguson,* 74 Ark. 298; *English* v. *Anderson,* 75 Ark. 577.

The court must presume that, if timely objection had been made, the trial judge would have promptly eliminated the extravaganza of counsel.

The judgment is affirmed.