ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY *v.* BOOTH.

Opinion delivered March 6, 1911.

1. MASTER AND SERVANT—ASSUMED RISKS—MASTER'S NEGLIGENCE.—While a servant assumes all the ordinary risks incident to the service in which he is employed, he does not assume any risk caused by the master's negligence, and may act upon the presumption that the master has exercised due care for his protection. (Page 231.)

2. SAME—ASSUMED RISKS—NEGLIGENCE OF FELLOW SERVANT.—Under the act of March 8, 1907, making the master responsible to a servant who, while exercising ordinary care, is injured by the negligent act of a fellow servant "the same as if the negligence was that of the master." a servant does not ordinarily assume the risk of the negligence of a fellow servant, but may act upon the presumption that the fellow servant will exercise due care. (Page 231.)

3. SAME—ASSUMED RISKS—NEGLIGENCE OF FELLOW SERVANTS.—It cannot be said, as a matter of law, that a locomotive fireman who, in discharge of his duties, got down from his seat and was engaged in coaling the engine while the engine was backing at high speed, assumed the risk of the negligence of fellow servants, causing a collision and injuring the fireman. (Page 232.)

4. SAME—CONTRIBUTORY NEGLIGENCE.—Though it is ordinarily the duty of a locomotive fireman to be in his seat when a coupling is being

made in order that he may receive signals, yet it was not contributory negligence for him to be engaged elsewhere in coaling the engine where it was necessary and in accordance with the rules for him to do so. (Page 232.)

5. Same—contributory negligence—instruction.—Where a locomotive fireman was injured while engaged in coaling his engine, at the time a coupling was being made, an instruction to the effect that if it was his duty to keep a lookout and receive signals when a coupling was about to be made, and if his failure to do so contributed to his injury then he "was guilty of contributory negligence and can not recover" was properly modified by adding: "unless you find that he was at the time engaged in other duties which made it impossible for him to keep such lookout, and was exercising due care and caution to avoid injury." (Page 233.)

6. Instructions—specific objection.—An objection to the particular language of an instruction should be specific, in order to call the court's attention to the defect objected to. (Page 234.)

Appeal from White Circuit Court; *Hance N. Hutton,* Judge; affirmed.

*W. E. Hemingway, E. B. Kinsworthy, P. R. Andrews* and *James H. Stevenson.*

Plaintiff was guilty of contributory negligence, and the court should have instructed a verdict for defendant. 91 Ark. 86; 41 Ark. 542; 70 Ark. 603; 79 Me. 397; 38 W. Va. 206; 27 Minn. 137; 6 N. W. 553; 98 Ill. 481; 5 Am. & Eng. Ry. Cas. 651; 37 W. Va. 180; 16 S. E. 457; 106 Ia. 253; 76 N. W. 670. The risk of injury was assumed by plaintiff. 88 Ark. 548; 77 Ark. 367; 79 Ark. 53; 89 Ark. 588; 87 Ark. 396. Misleading and contradictory instructions should not be given. 72 Ark. 31; 74 Ark. 437; 64 Ark. 332; 89 Ark. 213; 92 Ark. 6. The negligence of the master may be assumed. 77 Ark. 367; 79 Ark. 53; 88 Ark. 548; 89 Ark. 508; 87 Ark. 396.

*S. Brundidge, Jr.,* and *Harry Neelly,* for appellee.

Plaintiff had the right to assume that the master would not subject him to abnormal risks. 80 Minn. 400; 83 N. W. 440; 112 Ind. 166; 11 N. E. 322; 67 Ark. 377; 55 S. W. 165; 43 Minn. 42; 44 N. W. 522; 89 Tex. 635; 35 S. W. 1058; 60 O. St. 487; 54 N. E. 475; 107 Tenn. 340; 64 S. W. 1; 56 Kan. 228; 42 Pac. 724; 104 Ia. 139; 73 N. W. 614; 98 Wis. 348; 74 N. W. 212; 23 N. E. 675; 102 Ill. App. 428; 66 N. E. 829; 93 Ga. 259; 159

Mass. 532; 67 Ark. 377; 64 Ia. 613; 92 N. Y. 639; 16 L. R. A. 189.   The risk of injury was not assumed.   77 Ark. 367; *Id.* 458; 76 Ark. 184; 80 S. W. 387; 70 Ark. 295; 89 S. W. 370.

FRAUENTHAL, J.   This is an action instituted by William Booth, the plaintiff below, to recover damages for personal injuries which he alleged he sustained while in the service of defendant.   The plaintiff was a fireman on one of defendant's freight trains, and he alleged that he received the injuries complained of by reason of the negligence of other employees of defendant in carelessly backing the engine and cars attached with great and unusual force against other cars of the trains, so that he was thrown with great violence against the gate chains across the tender and injured thereby to such an extent that it caused the paralysis of his lower limbs.   The defendant denied all allegations of negligence contained in the complaint, and pleaded that any injury which plaintiff sustained was caused by his own contributory negligence or resulted from a risk which he assumed by his employment.   It further alleged that plaintiff had, by written contract duly executed by him, in consideration of re-employment released defendant from all liability by reason of said injuries.   The plaintiff denied the execution of said alleged release; and the defendant virtually abandoned that defense by failing to introduce any evidence to sustain that plea and by failing to ask any instruction presenting that issue to the jury.   The testimony on the part of the plaintiff tended to establish the following facts:   On the early morning of September 12, 1909, while it was yet dark, the plaintiff was engaged in the discharge of his duties as a fireman on one of defendant's freight trains, and while at the station of Kensett it became necessary to attach to the train two stock cars which were standing on a switch.   The engine was detached from the main body of the freight train, which was left on the main line, and proceeded on said switch and attached the two stock cars to the rear of the engine.   The engine with the cars attached then entered on the main line at a distance of about one-half mile from the main cars of the train and proceeded backward in order to couple thereto.   When the engine began backing on the main line, it was going at a rate of speed of about six to eight miles per hour, and the engineer directed the plaintiff to light a lamp at the water glass, which reg-

isters the water in the boiler, and which had been blown out, and also to put coal in the engine so as to get the fire in proper condition. The plaintiff lighted the lamp, which took a short time on account of the wind, and then proceeded to shovel the coal in the engine. He had taken up the scoop and was bent over in the act of opening the door of the engine when the engine and two cars were backed at such a rate of speed that they were thrown against the portion of the train on the main track with such great and unusual force and violence that it knocked plaintiff off his feet and threw him on the iron chains across the tender. It threw him with his back against these chains with such force that it bent him double and injured him very severely. He was unable to move himself, and was placed upon a cot and carried on a passenger train to Little Rock. The testimony tended to prove that at the time the coupling was attempted to be made the engine was going at a rate of speed of six to eight miles per hour, which was an unusual and dangerous rate of speed at which to go in making a coupling, and that this was due either to the negligence of the engineer or to the negligence of the brakeman in failing to give the engineer the slow up signal. The testimony tended further to prove that in the proper discharge of his duties the fireman of a freight train should ordinarily occupy a seat in the cab while the train is backing to make a coupling, but that it is also his duty to obey the directions of the engineer and to put coal in the engine at any time that it may be needed, even though it is backing.

The plaintiff testified that when the engine entered on the main track and proceeded back towards the balance of the train in order to couple to it he knew the engine was going at a rate of speed of from six to eight miles an hour, and that this was an unusual and dangerous rate of speed at which to go in making a coupling; but he also testified that he thought the engineer would slacken the speed before the balance of the train was reached. At that time the engine was nearly one-half mile from the balance of the train, and the plaintiff left the seat in the cab and proceeded to light the lamp and fire the engine, standing in the deck of the engine. The engineer denied that he had directed the plaintiff to light the lamp or fire the engine, and testified that plaintiff at his own instance was standing on the iron bridge between the engine and

tender rolling a cigarette, and that he was in that attitude when the impact of the cars came at the time of the coupling. He also testified that the engine was only going at the rate of three or four miles an hour at the time of the coupling, which was a safe and ordinary rate of speed for that purpose. The jury, however, made a finding sustaining the testimony given on the part of the plaintiff, and upon this controverted question of fact we must be bound by their determination. The jury returned a verdict in favor of the plaintiff, and the defendant prosecutes this appeal.

It is urged by counsel for defendant that the plaintiff is not entitled to recover, under his own testimony, because the injury which he received was due to a risk which he assumed. It is insisted that the plaintiff, when he left the seat in the cab, which was a safe place, and stood in the deck of the engine, knew the high rate of speed at which the engine was backing and that it was dangerous to make a coupling at that rate of speed, and therefore assumed the risk of any injury occurring therefrom. It is, of course, well settled, indeed, so well settled that it is now considered almost elementary, that a servant assumes all the ordinary and usual risks and perils that are incident to the service in which he is engaged; but it is equally well settled that he does not assume any risk of danger caused by the negligence of the master. The result of that principle is that the servant has the right to assume that the master has exercised and will exercise due care and diligence, and he has the right, while exercising ordinary care for his own safety, to act upon the presumption that the master has exercised and will exercise that care and diligence for his protection. *Choctaw, O. & G. Rd. Co.* v. *Jones,* 77 Ark. 367; *Southern Cotton Oil Co.* v. *Spott,* 77 Ark. 463; *Choctaw, O. & G. Rd. Co.* v. *Craig,* 79 Ark. 53; *Pettus* v. *Kerr,* 87 Ark. 396; *St. Louis, I. M. & S. Ry. Co.* v. *Harmon,* 85 Ark. 503; *St. Louis, I. M. & S. Ry. Co.* v. *Birch,* 89 Ark. 424.

Now, by the act of the General Assembly approved March 8, 1907 (Acts 1907, p. 162), a railroad company is made responsible for the injuries to its servant caused by the negligence of a fellow servant. By virtue of that act the master is made responsible to his servant who, while exercising ordinary care, is injured by the negligent act of a fellow servant, "the same as if the

negligence was that of the master." The servant of a railroad company does not therefore ordinarily assume the dangers or perils that arise from or which are consequent upon the negligence of a fellow servant. The servant has the right to assume that a fellow servant will exercise due care in the performance of the duties imposed upon him, and has a right, while in the exercise of ordinary care himself, to act upon the presumption that he will exercise that care and diligence for his protection. *St. Louis, I. M. & S. Ry. Co.* v. *Ledford,* 90 Ark. 543; *St. Louis, S. W. Ry. Co.* v. *Burdg,* 93 Ark. 88.

Now, according to the testimony adduced upon the part of the plaintiff, it appears that, at the time he proceeded to take his place in the deck of the engine and to prepare to put coal in the engine, the engine, although backing at a high rate of speed, was at a sufficient distance from the balance of the train so that by the exercise of ordinary care and diligence the speed could have been slackened to such an extent that the coupling could have been made with the ordinary impact and with safety to the plaintiff. According to the testimony, if the brakeman had not been negligent in failing to give the slow-up signal, or if the engineer had not been negligent, if he received such signal, in not slackening the speed of the engine, the coupling would have been made with safety to the plaintiff in the position where he was. The plaintiff had a right, while he was discharging the duties imposed upon him in firing the engine, to presume that these fellow servants would exercise due care and diligence in the performance of their respective duties and to act upon that presumption. It cannot be said therefore, as a matter of law, that he assumed the risk of the danger that was thus caused by the negligence of one of these fellow servants. He was not aware of the negligence of these fellow servants which did not occur when plaintiff proceeded to stand in the deck of the engine, but which actually occurred when the engine made its close approach to the balance of the train.

The defendant urges that plaintiff was guilty of an act of negligence which contributed to cause his injury by going down into the engine while the coupling was being made, instead of remaining in the safe place upon the seat in the cab. It is insisted that, according to the customary rules, the fireman was

required to be in his seat in the cab to receive signals from brakemen when a coupling was being made. While that was ordinarily the rule of the company, yet the evidence shows that, when directed by the engineer to fire the engine, it was necessary and in accordance with the rules for the fireman to go down in the deck of the engine to perform that duty. He could not be said, therefore, to be guilty of contributory negligence if under these circumstances he was performing that duty in the deck of the engine. That question was, we think, fairly submitted to the jury by instruction No. 5 asked by the defendant and as modified by the court. The instruction is as follows, the modification made by the court consisting of the words in italics added to the instruction as asked by the defendant:

"5. If you find from the evidence in this case that it was the duty of the plaintiff, while engaged in the performance of his duties as a locomotive fireman, to receive from the brakeman on said train signals indicating that cars were about to be coupled on to the locomotive on which plaintiff was when he was injured, and find that plaintiff negligently failed to keep a proper lookout for such signals and to receive the same; and further find that if plaintiff had been in his proper position on said locomotive in time to have permitted plaintiff to take such position as would have prevented his injury; and further find that this negligent and careless conduct of the plaintiff was the cause of, or that it contributed in any manner, or to any extent, or to any degree, to his injury, then plaintiff was guilty of contributory negligence, and can not recover in this action, and your verdict must be for the defendant, *unless you find that he was at the time engaged in other duties which made it impossible for him to keep such a lookout, and was exercising due care and caution to avoid injury.*"

It is urged by counsel for the defendant that this modification was erroneous for the reason that the instruction, as modified, fails to submit to the jury the question as to whether or not the plaintiff did the proper thing in going down in the deck of the engine, and as to whether or not he was negligent in not being in his seat in the cab. But, under the evidence, we think that the jury was warranted in finding that he was not negligent in failing to remain in the seat in the cab if his duties at the time required him to be engaged in the deck of the engine. We think,

therefore, that the question as to whether or not the plaintiff was negligent in not being or remaining in the seat in the cab was properly submitted to the jury by this instruction as modified and given by the court, under the testimony adduced upon the trial of the case. The court did not err in modifying the instruction.

The defendant contends that the court erred in giving the following instruction at the instance of the plaintiff: "5. The jury are instructed that, when the plaintiff entered the service of the defendant railway company, he assumed all the risks incident to the service he entered, but he did not assume a risk created by the negligent act or acts of the employees of said company and only such risks that he knows to exist, or may know of by exercise of ordinary care."

It is urged that by this instruction the court told the jury that the plaintiff assumed all the risks incident to the service but only such risks that he knew to exist or might have known by the exercise of ordinary care, and that he did not assume a risk created by the negligent act of the employees of the company, even though he was aware of such negligence. We do not think that this is the true meaning of this instruction. We think that it fairly means that the plaintiff assumed all the risks incident to the service he entered, but he did not assume risks created by the negligent act or acts of the employees of the company, and that he did assume the risk of such acts of negligence which he knew to exist or might know by the exercise of ordinary care. If the language of this instruction, in the opinion of the defendant, was ambiguous, it was its duty to call to the attention of the trial court the specific objection thereto which it now urges. If it had done that, the court no doubt would have corrected the verbiage so as to express its meaning more plainly. The defendant did not request that the verbiage of the instruction be changed, nor did it call to the attention of the court the specific objection which it now makes. It cannot, therefore, now complain of this instruction.

The defendant has not urged upon this appeal that the amount of the verdict returned by the jury is excessive. It has urged that other errors were committed, but we do not think that it would serve any useful purpose to detail or to discuss them. We have carefully examined the alleged errors which it urges,

but we do not think that its contention is well founded as to any of them.

The judgment is accordingly affirmed.