SLIM AND SHORTY *v.* STATE.

Opinion delivered May 8, 1916.

1. RESISTING ARREST—ACTS OF OFFICERS—QUESTION FOR JURY.—Where defendants were charged with resisting an arrest, the issue of whether the officers complied with the terms of Kirby's Digest, § 2124, requiring the officers to inform the persons about to be arrested of their intention to make the arrest, and of the offense with which they were charged, is for the jury under the facts.

2. RESISTING ARREST—IDENTITY OF OFFICERS—KNOWLEDGE.—The issue of whether defendants knew that the parties making the arrest were officers, was, under the evidence, for the jury.

3. CRIMINAL LAW—ARREST—WARRANT.—The statute authorizes an arrest by a peace officer without a warrant, where he has reasonable grounds for believing that the person arrested has committed a felony.

4. CRIMINAL LAW—RESISTING ARREST—ASSAULT WITH INTENT TO KILL —EVIDENCE—ARTICLES FOUND ON ACCUSED.—When indictments charging the crime of resisting an arrest and assault with intent to kill, are tried together, testimony showing that defendants at the time of their arrest had on their persons the paraphernalia of burglars and robbers is competent as throwing light upon the motive or intention of the defendants, in threatening to draw, and in drawing their guns upon the officers.

5. TRIAL—CONDUCT OF COUNSEL—DISCRETION OF COURT.—A wide discretion is lodged with trial judges to see that the examination of witnesses is conducted fairly, and that the attorneys representing the opposing sides of the cause observe a proper decorum toward each other, as well as toward the court, and, as attorneys are officers of the court, the presiding judge is under a reciprocal duty to treat them with fairness and becoming courtesy, while they are conducting their client's cause, which they have a right to, and must, do.

6. TRIAL—ACTION OF COURT—ADMONITION TO WITNESS AND COUNSEL.—It is not error for the trial court to admonish a witness that he has taken an oath to tell the truth, the whole truth, and nothing but the truth, and in stating to the witness that he must answer the question propounded to him; nor in saying to appellants' counsel that the witness was able to take care of himself.

7. CRIMINAL LAW—TRIAL—REASONABLE DOUBT—INSTRUCTION.—Two defendants were indicted and tried together for the crimes of resisting arrest and assault with intent to kill. *Held*, an instruction that "there are two separate charges and two defendants. Take up each charge against each defendant separately and carefully consider them and return your verdict according to what you believe is right under the evidence," is proper, when the court otherwise properly instructed the jury on the question of reasonable doubt.

8. APPEAL AND ERROR—INSTRUCTION ON ISSUE OF INTENT IN CRIMINAL CASE.—An instruction on the issue of defendants' intention in a prosecution for resisting an arrest, held valid in the absence of a specific objection thereto.

9. TRIAL—INSTRUCTION AFTER ARGUMENT—CRIMINAL TRIAL.—It is within the discretion of the trial court to instruct the jury, after the conclusion of the argument, at their request on the question of accessories.

Appeal from Little River Circuit Court; *Jefferson T. Cowling*, Judge; reversed in part; affirmed in part.

### STATEMENT BY THE COURT.

Appellants were indicted jointly for the crime of an assault with intent to kill. They were also jointly indicted for the crime of resisting an officer. By consent the causes were tried together. Appellants were both convicted on the charge of resisting an officer, and appellant Shorty was convicted of an assault with intent to kill. From these convictions appellants have duly prosecuted this appeal.

The facts are substantially as follows: Robert Pierce, a deputy sheriff of Little River County, had information to the effect that there were two men coming in on a certain train who were suspected as being men who figured in the holdup of train No. 1 at Rich Mountain. He was requested by an official of the Kansas City Road to meet the train and take off the men. Pierce went to meet the train on which he was informed that these men were traveling and was told by the conductor that they had gotten off a few miles back. Pierce and two other deputies then went in an automobile to capture the men. When they had proceeded about two and a half miles they met the men and the driver of the car stopped for them to get out. The driver of the car ran within from six to ten feet of the men and stopped the car, when Pierce said, speaking to the men, "Boys, we want you; put up your hands." The men started for their guns. Pierce asked them not to pull their guns. Pierce saw that one could not get his gun out as it was hung, and told one of the deputies to watch that man (who was called Slim). The other man (called Shorty) was pulling his gun and Pierce asked him not to pull it, but he reached around and caught hold of it with his left hand and jerked his gun out with his right hand, and when he did that the gun came in a certain position (which witness Pierce indicated) and Pierce then fired. Pierce told Shorty not to pull his gun, that if he did he would kill him, but Shorty did not heed the request, but jerked his gun and it came out in the position indicated by the witness, when Pierce fired. Shorty was pointing his gun right at the

face of another deputy named Finley. Finley and Pierce fired about the same time. When they fired Shorty fell. Pierce then wheeled around to look at Slim, and at that time his hands were going up, and his gun fell out in front of him. Pierce then turned to see what Shorty was doing. He sat up and looked at his gun. While Shorty was attempting to draw his gun he was gritting his teeth.

Slim and Shorty were searched. They had a box of cayenne pepper, nearly a full box of cartridges, a mask, whistles and rings, and two pistols. One of the pistols was a 38 Special and the other a 41 Special. Both were loaded. Shorty was shot, and in a conversation with him Pierce remarked that he regretted that it happened, but told Shorty that he was to blame for it. Shorty said, "Yes, you had it to do all right." Shorty refused to give any name. At the time he refused to give his name he was shot and in a very critical condition, not in much shape to talk. Neither of the appellants had given witness Pierce their names. The officers were looking for train robbers, and it had been reported to them that they had bad men to contend with. Pierce kept hallooing at Shorty to throw up his gun or he would kill him, but Shorty continued to pull it until he got it out and had it pointed right at Finley's face, when both Pierce and Finley fired.

Appellant Slim was a witness and testified that his real name was Willie Willis. While he was being cross-examined by the prosecuting attorney in regard to Shorty's name, the record shows that he did not answer the questions readily and his attorney, Mr. Morrell, who was standing, objected to the questions being propounded by the prosecuting attorney, whereupon the court remarked: "Sit down, Mr. Morrell. The witness is able to take care of himself." To which remarks of the court appellant excepted. While the witness was being further interrogated the court remarked: "You took an oath awhile ago to tell the truth, the whole truth and nothing but the truth. You must answer." To which remarks of the court the appellants excepted.

Appellant Slim testified that he did not refuse to give his name; that he had worked with Shorty for six weeks and had been with him four or five days before they were arrested, and that he had not found out anything more about his name than that he was named Shorty; that he could not swear to Shorty's real name. He testified that he did not know that the men who arrested them were officers; that they did not advise him that they were officers; that he put his hands up when they told him to do so and did not intend to resist them.

Appellants contend that the court erred in giving certain instructions, which we will comment upon in the opinion.

*June R. Morrell,* for appellants.

1. The verdict is contrary to the evidence. The officers did not comply with Kirby's Digest, § 2124. Appellants were not advised that they were officers, nor of the offense charged.

2. There was error in admitting testimony as to what was found on appellants and their refusal to give their names, etc.

3. The court erred in its remarks to counsel and in refusing to hear objections to improper cross-examination. 83 Ark. 379; 90 S. W. 933; 51 *Id.* 149; 27 Cal. 300.

4. The court erred in its instructions and in giving additional instructions after the jury retired.

*Wallace Davis,* Attorney General, *Hamilton Moses,* Assistant, for appellee.

1. The verdict is responsive to the evidence. The words used by the officers could convey no other meaning than that they were arrested by officers for crime. This was for the jury. 49 Ark. 453.

2. It was not error to admit the testimony as to what was found on appellants and their refusal to give their names. 84 Ark. 119; 72 Ark. 598; 1 Greenl., Ev., § 53; 1 Bishop on Crim Pro., § 1126; 46 Ark. 141; 56 *Id.* 4; 58 *Id.* 513; 66 *Id.* 53.

·     3; There was no error in the remarks of the court, or in the refusal to sustain objections to alleged improper cross-examination.   71 Ark. 65; 85 *Id.* 179; 84 *Id.* 87.

4.   There is no error in the instructions.   21 Ark. 357; 58 *Id.* 353; 24 *Id.* 264; 64 *Id.* 247; 66 *Id.* 588, 601; 82 *Id.* 64; 78 *Id.* 147; 85 *Id.* 179; 74 *Id.* 377; 77 *Id.* 97.

5.   The court did not err in giving additional instructions after the jury had retired.   102 Ark. 506; 79 *Id.* 53.

Wood, J., (after stating the facts).   I.   Section 2124 of Kirby's Digest requires an officer making an arrest to inform the person about to be arrested of the intention to arrest him and of the offense charged against him for which he is arrested.   Appellants contend that the evidence is not sufficient to show that the officers complied with these requirements.

(1)   The testimony was sufficient to warrant the court in submitting to the jury the issue of fact as to whether or not appellants were advised by the language used by the officers in making the arrest of their official character.   The testimony shows that the officer said to the appellants "Boys, we want you; put up your hands." This language was sufficient to convey to the appellants the idea that they were being arrested by officers.   At least the jury were justified in so finding.   The officers' posse were in an automobile and it was in daylight and on the public highway, and there was nothing in the mode of conveyance or the manner in which appellants were approached by the officers to indicate that the latter were attempting to hold up appellants for the purpose of robbery or other unlawful detention.   The language used was such as officers might be reasonably expected to use in arresting criminals.   The officers had been informed that the appellants were dangerous men, and the facts show that at the time the arrest was made the officers did not have time to announce the fact that they were officers before the arrest was made and to formally notify them of the offense for which they were being arrested.

If the officers, addressing the appellants, had said: "Boys, we want to arrest you; we have a warrant for you," or "Boys, we want to arrest you," there could be no doubt that such language would have been sufficient to advise appellants of the official character of the parties making the arrest. The language, "Boys, we want you," was but tantamount to the expressions used above.

(2) The issue as to whether appellants knew that the parties making the arrest were officers was, under the evidence, one for the jury. See *Putman* v. *State,* 49 Ark. 449-453.

In a conversation between Shorty, one of the appellants, and Pierce, Pierce stated that he regretted that he had to shoot Shorty and told Shorty that he was to blame for it, whereupon Shorty replied "Yes, you had it to do." This language of itself shows at least that appellant Shorty knew that Pierce was an officer.

(3) The statute authorizes an arrest by a peace officer without a warrant where he has reasonable grounds for believing that the person arrested has committed a felony. The appellants were convicted under section 1962 of Kirby's Digest, which makes it a felony for any person to resist the execution of any criminal process by threatening to draw or by actually drawing a pistol upon the sheriff or other officer authorized to execute process.

There is conflict in the testimony as to whether or not the appellant Slim threatened to draw or actually drew his pistol. Pierce testified that the men started for their guns, and that he saw that one could not get his gun out as it was hung, and told one of the deputies to watch that man, who was called Slim, and that when Shorty fell he, Pierce, wheeled around to look at Slim and at that time his hands were going up and his gun fell out in front of him. This testimony was sufficient to warrant the finding that Slim was threatening to draw and had drawn his weapon. The undisputed evidence shows that Shorty persisted in using his weapon after being warned that he would be killed if he did so.

(4)  II.  It was competent to show that appellants had on their person at the time of the arrest pistols, masks, whistles, rings, pepper and cartridges.  It is a matter of common knowledge that these are but a part of the usual paraphernalia of burglars and robbers.  The testimony as to this equipment was competent as throwing light upon the motive or intention of the appellants in threatening to draw and in drawing their guns upon the officers.  See *Howard* v. *State,* 72 Ark. 598; *Woodward* v. *State,* 84 Ark. 119.

III.  There is nothing in the record indicating the manner assumed by the circuit judge when he made the remarks directing the attorney of appellants to "Sit down; witness is able to take care of himself."  The record indicates that the attorney for appellants was objecting to questions being propounded by the prosecuting attorney.  These questions were proper.  The record does not reveal the manner of the attorney of appellants in making the objections to them.

(5)  Wide discretion is necessarily lodged with the trial judge to see that the examination of witnesses is conducted fairly, and that the attorneys representing the opposite sides of the cause observe a proper decorum towards each other as well as toward the court.  And, as attorneys are officers of the court, the presiding judge is under a reciprocal duty to treat them with fairness and becoming courtesy while they are conducting their client's cause which they have a right to and must do.  The trial judge must hold the scales of justice in equipoise, and when it becomes necessary to rule upon the conduct of the attorneys who are conducting the trial for their respective clients he should do so in such manner as not to impress the jury that he is biased or prejudiced for or against either side to the controversy.  This imposes upon the court a delicate duty, but one which, in the interest of justice, he should firmly and scrupulously perform.  This record does not disclose any error upon the part of the trial judge in this respect.  See *Dallas Elec. St. Ry.* v. *McAllister,* 90 S. W. (Tex.) 933;

*McMinn* v. *Whelan,* 27 Cal. 300; *Sharp* v. *State,* 51 Ark. 147-155; *Tuttle* v. *State,* 83 Ark. 379.

(6)   The court did not err in admonishing the witness that he had taken an oath to tell the truth, the whole truth and nothing but the truth, and in stating to the witness that he must answer the question; nor in saying to the appellants' attorney that the witness was able to take care of himself.   These remarks were all elicited by the manifest hesitation and reluctance of the witness to answer proper questions and the interference of his counsel while the questions were being propounded. .

The remarks of the trial judge and the manner of their utterance, so far as the record shows, were not such as to indicate any prejudice in his mind against the appellants, and they were not calculated to influence the jury to return a verdict against them.

IV.   The court, in one of its instructions, No. 3, among other things told the jury as follows:   "There are two separate charges and two defendants.   Take up each charge against each defendant separately and carefully consider them and return your verdict according to what you believe is right under the evidence."

(7)   Appellants contend that this instruction deprived them of the benefit of a reasonable doubt, but we do not so construe it.   The instruction was but cautionary in form.   It admonished the jury that each charge should be carefully considered, and the effect of the instruction was to tell the jury that their conclusion must be based upon the evidence.   The jury were not authorized, under this instruction, by the words "what you believe is right" to erect their own standard of right regardless of the evidence, but they were instructed to base their belief as to the right and proper verdict upon the evidence in the cause.   The instruction when taken in connection with the other instructions in which the court correctly defined "reasonable doubt" and told the jury that the evidence must convince them of the guilt of the defendants beyond a reasonable doubt or they should acquit, could not have been prejudicial.

After the instructions had been given and the argument of counsel had been concluded the jury retired to consider their verdict and after some deliberation returned into the court room and requested further instruction on the question of accessories. Whereupon the court proceeded to instruct them, and after correctly defining what it takes to constitute an accessory, the court used this language: "The only way you can tell a person's intentions is by their acts, and so it is proper for you to take into consideration all the circumstances in determining whether or not either of the defendants aided and abetted or was ready and consenting to aid and abet, before, at the time and since the time; anything in your judgment that would throw any light on the intent of the parties, together with all the other facts and circumstances. They may take into consideration in determining whether or not they were aiding and abetting or ready and consenting to aid and abet his acts," etc.

Appellants objected to the giving of further instructions and saved a general exception to the giving of the instruction.

Counsel for appellants single out the language above quoted and contend that it was erroneous. The instruction standing alone would perhaps be erroneous and prejudicial, but when the instruction is considered is connection with the charge of the court taken as a whole we conclude that it is not calculated to prejudice the appellants. The effect of the instruction, when considered in connection with the other parts of the court's charge, was to tell the jury that they might take into consideration the conduct of the appellants prior to and since the alleged commission of the offense, as shown by the evidence, that would tend to throw any light upon the intent of the appellants at the time the alleged offense was committed.

(8) The use of the language "it is proper for you to take into consideration anything in your judgment that would throw any light on the intent of the parties," etc., evidently was intended to convey to the jury the fact that

they had a right to consider anything growing out of a consideration of the evidence that would throw any light upon the intent of the parties. The objection to this instruction, the same as the objection to the word "right," as discussed in the instruction above, should have been made specific in order to avail appellants, for, when the language is interpreted in connection with the other portion of the court's charge in which the jury are told that they could not convict the defendants unless they were convinced from the evidence beyond a reasonable doubt, etc., it is clear that the court meant to confine the jury, and did confine them, to a consideration of the evidence in the case, and that they were not authorized to consider anything that was not in evidence. So the correctness of the instructions must not be tested by fragmentary excerpts, but the charge must be taken and considered as a whole and when so considered we conclude that it is free from prejudicial error. *Dunnahoe* v. *Williams,* 24 Ark. 264; *Kent* v. *State,* 64 Ark. 247-250; *Satterwhite* v. *State,* 82 Ark. 64.

(9) It was within the discretion of the court to instruct the jury, after the conclusion of the argument, at their request on the question of accessories. *Pless* v. *State,* 102 Ark. 506. See also, *Chocataw, Okla. & G. Ry. Co.* v. *Craig,* 79 Ark. 53.

There was testimony tending to show that when the officers approached the appellants the driver ran the motor car up within a few feet of them and the officers jumped out with their guns presented towards the appellants before anything was said by the officers. A majority of the court is of the opinion that the testimony is not legally sufficient to sustain a conviction of appellant Shorty for the crime of assault with intent to kill, and that the court erred in not granting his motion for a new trial as to this offense.

The judgments of conviction for resisting officers will be affirmed. The judgment convicting appellant Shorty of the crime of assault with intent to kill will be reversed and the cause is dismissed.