STATE OF MISSOURI, Respondent, *v.* WILLIAM WEINERS, Appellant.

### November 27, 1877.

1. Where the undisputed testimony shows that defendant, during an angry altercation with deceased, drew a pistol, declaring at the same time that he would kill deceased, but was induced by a by-stander to put up his weapon; and that subsequently, during the same altercation, he drew a pistol in each hand, and while his right arm was being held by a by-stander to prevent the killing, he threw his left hand over the shoulder of the interposing party and shot and killed deceased; *held*, that these facts showed premeditation, deliberation, wilfulnes, and malice.

2. The omission by the court to instruct the jury as to murder in the second degree is not error where there is no evidence in the case upon which to base such an instruction.

3. In a trial for murder it is competent for the prosecution to introduce part of the vertebral column in which was embedded the bullet which caused the death, for the purpose of showing the relative positions of the parties, when the shot was fired, as bearing upon the question of self-defence.

4. Where the prosecuting attorney, during a recess of court, and before the witness was put upon the stand, without any attempt at intimidation or undue influence, asks a witness subpœnaed for the defence what will be the character of his testimony, this is not unfair or unjust, and is not a ground for reversal.

5. Where the record shows that defendant's counsel, in addressing the court, during the trial, admitted "the killing as charged in the indictment," the conviction will not be set aside merely because the prosecuting attorney, in his argument to the jury, said that the defendant had "committed the murder."

APPEAL from the St. Louis Circuit Court.

*Affirmed.*

BOYLE & DELEHANTY, for appellant: Instructions as to murder in the second degree should have been given. — Wag. Stat. 1106, sec. 30; *Hardy* v. *The State,* 7 Mo. 609; *The State* v. *Byrne,* 24 Mo. 55; *The State* v. *Bryant,* 55 Mo. 75; *Foster* v. *The People,* 50 N. Y. 601. The possibility of prejudice through error of the court which tried the accused is fatal to a judgment pronounced on a verdict of guilty. — *The State* v. *Brown,* 1 Mo. App. 87; *The State* v. *Holine,* 54 Mo. 160; *Clark* v. *Vorce,* 19 Wend. 232. Surprise. — *Todd* v. *The State,* 25 Ind. 213; *Phillips* v. *The State,* 23 Ga. 288; *Pells* v. *Davis,* 29 Mo. 184. Misconduct of circuit attorney. — *The Commonwealth* v. *Smith,* Bright's Dig. 506; *Carey* v. *King,* 5 Ga. 83; *Gould* v. *Moore,* 40 N. Y. 395; *The State* v. *Kring,* 64 Mo. 591; *The State* v. *Reilly, ante,* p. 392; *Sullivan* v. *The People,* 31 Mich. 4; *Jenkins* v. *North Carolina Ore Dressing Co.,* 35 N. C. 564, 565.

L. B. BEACH, Circuit Attorney, for respondent: Where the testimony shows that the crime committed is murder in the first degree the instructions should be confined to that degree. — *The State* v. *Lane,* 64 Mo. 319. Murder in the first degree. — *The State* v. *Linne,* 64 Mo. 319; 57 Mo. 40; *The State* v. *Holme,* 54 Mo. 153; *The State* v. *Green,* 37 Mo. 466; 38 Mo. 270; 18 Mo. 435; *The State* v. *Foster,* 61 Mo. 549.

LEWIS, P. J., delivered the opinion of the court.

The defendant appeals from his conviction in the St. Louis Criminal Court of murder in the first degree. The testimony was remarkably free from conflicting statements. The facts, which appear to have been clearly established, were about as follows: Defendant was a private policeman at the Theatre Comique, employed to preserve order during the performances. The deceased, Americus V. Lawrence, was an assistant barkeeper on the ground

floor of the building.   On the night of January 29, 1877,
after the close of the performance, deceased, in obedience
to a direction from the principal barkeeper, went up stairs
and called defendant down to see a visitor.   Defendant, it
appears, had not wished to meet this visitor.   Upon coming
down he at once assaulted Lawrence with abusive language
for having summoned him, to which Lawrence at first an-
swered that he was not to blame, as he had only obeyed an
order.   From this proceeded an angry quarrel, full of irri-
tating expressions from both parties.   Deceased, a young
man, and very small as compared with the defendant, stood
all the while behind the bar, defendant being in front.   The
defendant drew a pistol, saying, "G—d d—n you, I'll shoot
you," when a witness rushed to him and persuaded him to
put up his weapon.   The altercation was kept up, at inter-
vals, for about three-quarters of an hour, when defendant
struck Lawrence in the face, across the counter.   Lawrence
stooped and picked up a soda-bottle.   He was in the act of
rising, when defendant drew a revolver in each hand.   The
same witness seized him from the front, and grasped his
right hand; but the defendant, throwing his left over the
witness's shoulder, fired the fatal shot, Lawrence fell dead,
and defendant ran out at the door.   It does not appear that
there was any previous hostile feeling between the parties.
It was stated in evidence that they had been friendly up to
the time of this quarrel.   No weapon was found upon the
deceased.

The court gave to the jury a series of instructions, to
which no objection is made so far as they were applicable
to a case of murder in the first degree.   Instructions were
also given explaining the law of self-defence and justifiable
homicide, to which no objection is made, and which were
ample to secure the defendant's rights in that relation.   No
instruction was asked for by defendant.   One of the points
stated as grounds for the appeal is the omission by the court
to instruct the jury concerning murder in the second
degree.   With the aid of an elaborate argument and brief

in defendant's behalf, we are yet unable to perceive upon what facts in the testimony a case of murder in the second degree could be supposed. Our statute, after defining murder in the first degree.as being " every murder which shall be committed by means of poison, or by lying in wait, or by any other kind of wilful, deliberate, and premeditated killing, or which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery, burglary, or other felony," declares that " all other kinds of murder at common law, not herein declared to be manslaughter or justifiable or excusable homicide, shall be deemed murder in the second degree." No form of murder at common law, lying within the limits thus defined, is pointed out to us as being indicated by any of the evidence. In one way only can that degree of crimê be here discovered, viz., by disbelieving all the testimony, except that which proves the mere fact of killing. According to our Supreme Court, when this fact stands alone, murder in the second degree will be presumed. But if such considerations furnish a reason for giving instructions about murder in the second degree, it will follow that, in almost every case of homicide, the instructions must run through all the grades of murder and manslaughter.

Such is not the law. In the trial of this case the strong suggestions of wilfulness, deliberation, premeditation, and malice were not attempted to be met otherwise than by a theory of self-defence. The grade of offence could not be reduced by the mere fact of high words between the parties, since the first aggressive act was committed by the slayer. The defendant's affidavit for a continuance, at the outset of the trial, could not, of course, circumscribe his line of defence. But it is, at least, significant of the understanding of himself and his counsel, that he therein " admits and justifies the alleged killing, because it was done in the lawful defence of his person, he having, at the time, a reasonable cause to apprehend a design on the part of the de-

ceased, Lawrence, to take defendant's life, or to do him some great personal injury, and that said danger was imminent and pressing." When a man, in angry altercation with another, draws a deadly weapon, declaring his purpose to kill his opponent, and afterwards, in the same altercation, uses the weapon fatally, it seems useless to dwell on any hypothesis which would exclude the elements of deliberation and premeditation. When, resisting all persuasion, he surreptitiously shoots, with the disengaged left hand, over the shoulder of the intending peace-maker, it seems no less absurd to wander away from the indications of wilfulness and malice. In this case, at least, the necessity for self-preservation presented the only other reasonable field of enquiry. It is always erroneous to burden a jury with instructions, however true as abstract propositions, whose operation lies beyond the practical tendencies of the evidence. We find no error of omission in the series here given.

The coroner, who had made a *post-mortem* examination of the deceased, introduced with his testimony two bones of the vertebral column, in one of which the fatal bullet was embedded. The object appears to have been to show, from the location of the bullet, the position in which the deceased must have stood, with reference to the person shooting. Defendant objected to this testimony as irrelevant and prejudicial, in view of the fact that the killing was admitted. It was, of course, unnecessary in order to prove the homicide. But it had a direct bearing on the question of self-defence, and was perfectly legitimate in that relation. There was no error in its admission.

It is urged that the circuit attorney was guilty of " ultra-professional conduct," which should cause a reversal. It appears that the defendant had filed an affidavit for a continuance, setting forth certain facts which he would be able to prove by one Crum, an absent witness. The court took a recess without passing upon the application. The circuit attorney caused Mr. Crum to be found at his residence,

and had him in court upon its resumption of proceedings. In the meantime he had taken Crum into a jury-room, and in the presence of several witnesses asked him what would be the character of his testimony. An affidavit from each of these witnesses shows what occurred in that interview. All agree that there was not the least attempt at intimidation, or undue influence of any sort, and that the whole demeanor of the circuit attorney was eminently fair, gentlemanly, and courteous. One swore that " said witness was not in the slightest degree disconcerted, frightened, or abashed ; but, on the contrary, was *nonchalant* and at his ease. He spoke freely, and without compulsion told all that he claimed to know." One of the affiants, an officer, held in his hand a note-book, to take down what was said. One stated that Crum was under the influence of intoxicating liquor. Affidavits were presented by defendant's attorneys, to the effect that they were so " surprised " at this proceeding on the part of the circuit attorney that they did not venture to put Crum on the stand as a witness ; that they were " not aware of all that may have happened while said witness was detained by the circuit attorney in the jury-room, as aforesaid," were " ignorant of what influence had been brought to bear upon said witness," and were " compelled to forego his examination on the witness-stand," etc.

If it were made to appear that any intimidation or undue influence was brought to bear upon the witness Crum, we might be able to understand the point of the defendant's complaint. But the contrary distinctly appears throughout the proofs. We are ignorant of any rule which requires that a prosecuting attorney shall not be on speaking terms with the defendant's witnesses. The conduct of that officer appears, on this occasion, to have been unexceptionable, and critically considerate of the claims of fairness and justice to the defendant. If counsel chose to assume the contrary, and, therefore, to deprive their client's cause of

important testimony, they cannot call upon the courts to indemnify their error of judgment.

Defendant complains, further, that the circuit attorney, in his closing argument, told the jury that the defendant was "hired as a bouncer, and had no business in the saloon." We are not informed of the degree of opprobrium implied in the term "bouncer," and, therefore, we cannot measure its probable effect upon the verdict. The circuit attorney said, also, that the defendant had "committed the murder." This seems to have been in allusion to a statement addressed to the court by defendant's counsel, which, in the bill of exceptions, appears thus: "If your honor please, the defence admits the killing as charged in the indictment." If there was danger that the jury would take the circuit attorney's remark in too literal a sense, the danger must have originated with defendant's counsel; since, if the killing was admitted "as charged in the indictment," it was clearly a case of murder in the first degree. But it is not to be supposed that either expression would be taken in its literal import by a jury sufficiently intelligent to try the case. If such objections can be entertained by appellate courts, we may hardly look more for any finality in criminal proceedings.

Finding no error in the record, we must affirm the judgment. All the judges concur.