**STATE of Missouri, Plaintiff-Respondent,**

v.

**Phillip Dean MYERS,
Defendant-Appellant.**

**No. 36184.**

Missouri Court of Appeals,
St. Louis District,
Division One.

June 1, 1976.

Rehearing Denied July 9, 1976.

Application for Transfer Denied
Oct. 12, 1976.

Robert J. Thomas, Jr., St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Paul R. Otto, Asst. Attys. Gen., Jefferson City, Courtney Goodman, Jr., Pros. Atty., Clayton, for plaintiff-respondent.

WEIER, Presiding Judge.

Defendant was convicted by a jury of robbery in the first degree and sentenced by the court, pursuant to the Second Offender Act, § 556.280, RSMo. 1969, to twenty-five years in the Department of Corrections.

An understanding of the points on appeal requires a brief summary of the facts. Defendant was charged with taking the purse of Susan McCool by force and violence on the night of March 19, 1973 at 7:45 p. m. At approximately 7:30 p. m. on the same evening Mrs. Sarah Green was returning home from a neighbor's house when a man carrying a gun grabbed her arm and threatened to harm her if she screamed. Mrs. Green freed herself and ran into the street where she stopped a passing motorist. She saw her assailant run to the driver's side of a pickup truck with a camper on top and saw the truck drive away although she did

not actually observe the man enter the truck. The Maplewood police were notified and given complete descriptions of the man and the vehicle which went out by radio to all cars. Because of strictures upon permitting evidence of crimes other than the one for which a defendant is being tried, the jury learned only that at 7:30 p. m. on March 19, 1973 witness Green had seen a man, whom she later identified as defendant, that he grabbed her arm, that he carried a pistol, and that he appeared to drive off in a camper truck. Mrs. Green described the vehicle as light green with a white camper which extended over the truck cab. There was a spare tire attached to the grill and the name "Sutton" was printed on the side.

The robbery victim, Mrs. McCool, was accosted only a few blocks away and but a short time later. Mrs. McCool noticed a camper truck of the same description following her. She heard the truck door slam and turned to see a man approaching her with a gun. He grabbed her coat collar and warned her not to scream, and when she did, he struck her several times on the head with the gun. He then ran off in the direction of the truck. Mrs. McCool heard the door slam and saw the truck move away down the street. Mrs. McCool's purse, which she had been carrying, was gone. Her head wounds required sixteen stitches. She described the man as in his forties, 5'7", medium build, with black curly hair, clean shaven, and wearing a green suit. On March 20, 1973 Mrs. McCool viewed a lineup at the Maplewood Police Department and identified defendant as her assailant.

Charles Deskin was driving through Maplewood at about 9:20 p. m. on March 19, 1973. Mr. Deskin has a police band radio in his car and heard that they were looking for a pickup truck with a white camper. He saw a vehicle fitting the description drive north on Edgar Avenue and then park on the corner of Walter and Pacific. Mr. Deskin went to a public phone and called the police. Officer Clyde Bull received the call and drove his unmarked car to Pacific where he parked about 100 feet behind the truck which was at the time unoccupied. Mrs. Green was called to identify the truck. Minutes later defendant, carrying a flashlight, passed the officer's car and went to the truck where he opened the door to the living quarters. The officer put his lights on high beam, activated the siren and pulled up behind the truck. Defendant was placed under arrest. A man's green suit, damp to the touch, was lying near the open door and was taken by the officer. (I' had been raining all evening.) There were dark stains on the left sleeve and the jacket front which proved to be type O human blood. Several long brown hairs clinging to the jacket front were also tested and determined to be Mrs. McCool's. Mrs. McCool's blood is type O.

Defendant's counsel raises ten points on appeal. He first contends that he was entitled to have punishment determined by the jury rather than the judge because the record of his prior convictions was not properly certified and because there was no evidence identifying him as the individual named therein.

Out of the presence of the jury the state offered two sets of documents, the first an Iowa district court record of judgment and sentence following defendant's guilty pleas to three crimes of rape, the second an Iowa State Penitentiary record of his incarceration and release including his photograph and fingerprints. The first set of documents includes a certificate of the district court clerk duly executed by a deputy clerk and by a judge of that court who is in turn certified by the deputy clerk to be duly commissioned and sworn judge of that court. The certification bears the court seal. The clerk is identified on the document as the "proper custodian of the records of said Court."

■ Properly authenticated records of the judicial proceedings of other states are entitled to full faith and credit in Missouri under federal and state law. 28 U.S.C.A. § 1738; § 490.130, *supra*.

■ Section 490.130 provides that the records and judicial proceedings of federal and state courts will be accorded the full

faith and credit they would receive in their place of origin if "attested by the clerk thereof, with the seal of the court annexed, if there be a seal, and certified by the judge, chief justice or presiding magistrate of the court * * *." The record of judgment before this court meets all the requirements of 28 U.S.C.A. § 1738 and § 490.130, and was properly admitted. The propriety of attestation by a deputy clerk has long been settled in this state. *State v. Shumate*, 516 S.W.2d 297, 300[6] (Mo.App. 1974).

■ The second document is also executed as required by 28 U.S.C.A. § 1739 and § 490.220, RSMo. 1969 (for records not appertaining to a court). There being no infirmity in the manner of attestation, both documents were properly admitted.

■ As to the contention that defendant was not identified as the individual named in these records, we note that identity of names is sufficient prima facie proof of that fact. No evidence was introduced that he was not the same Phillip Dean Myers. Hence the record does not support the claim. *State v. Shumate, supra* at 299[3].

Defendant's second point states: "The trial court erred in admitting the testimony, by deposition of Sarah Green, on the ground that said testimony constituted evidence of another crime and was so prejudicial and inflammatory as to effectively deny the defendant his fundamental right to cross-examine witnesses." In his pro se brief defendant also complains of the introduction of evidence of another crime.

What defendant's counsel contends in his argument, however, is that his cross-examination of the witness when her deposition was taken revealed that Mrs. Green began to cry after defendant grabbed her and threatened her with the gun. Defense counsel believed that he should read that part of her deposition because the fact that she had tears in her eyes might cast doubt upon her ability to identify her assailant. On the other hand, he feared that the jury might also infer therefrom that defendant had committed some crime against her and

therefore he refrained from using the testimony.

■ Evidence of other separate and distinct crimes, when not related to the cause on trial, is reversible error. But one of the exceptions to this general rule is that evidence of other crimes is competent when used to prove, among other things, the identity of the person charged with the crime on trial. *State v. Reese*, 364 Mo. 1221, 274 S.W.2d 304, 307 (banc 1954); *State v. Granberry*, 530 S.W.2d 714, 722[6] (Mo.App.1975). Sarah Green testified defendant grabbed her arm and she saw a revolver in his other hand minutes before and in the same area where he struck Susan McCool with a pistol and robbed her. This testimony presented no other facts indicative of attempted robbery or assault of Mrs. Green. It identified defendant as the perpetrator of the crime charged by being corroborative testimony to the identification by the victim. It has a "logical relevancy" in establishing the defendant's guilt. *State v. Tygart*, 531 S.W.2d 47, 51 (Mo.App.1975).

■ Defendant by his counsel chose not to introduce the testimony adduced on cross-examination at the deposition in the belief that any benefit would be outweighed by its prejudicial effect. He cannot here assert that his own decision not to cross-examine a witness on certain matters is the equivalent of a denial of his fundamental right to cross-examine that witness. Defendant does not cite, nor can there be found, support for such a proposition. The particular corollary to the main issue is at any rate not preserved for review, not having been set forth in the point relied on. *State v. Yearwood*, 510 S.W.2d 43, 44[2] (Mo.App.1974); Rule 84.04(d).

■ Defendant next complains of the prosecutor's use of leading questions during trial. He refers actually, however, to only very few places in the transcript where leading questions were asked. Other transcript references do not concern leading questions and are not considered here. The extent to which leading questions will be permitted is a matter for the trial court's

discretion and absent abuse will not constitute reversible error. *State v. Todd*, 372 S.W.2d 133 (Mo.1963). The trial court here permitted no leading questions and sustained defense counsel's every objection. The record does not support defendant's charge that the mere necessity of raising objections prejudiced him in the eyes of the jury by making it appear that he had something to hide. The trial court did not sanction improper questioning and granted all the relief requested. The point is without merit.

The fourth allegation of error deals with two separate and distinct actions of the prosecuting attorney. Defendant first contends that a mistrial should have been granted because the prosecutor spoke to Mr. White, a defense witness, without identifying himself as the prosecutor and without the knowledge and consent of defendant. The record of the interchange in chambers between both counsel, the court and the witness discloses that the prosecutor learned of the witness' presence during a recess and that he did not inform defense counsel that he was going to speak to him because he could not find him. The prosecutor approached White in the corridor, introduced himself and told him that he was a lawyer but not, apparently, that he was representing the state. He asked White what he had to say about Mrs. McCool and whether he had ever been convicted of anything. Throughout the in-chambers discussion the prosecutor staunchly maintained that he knew of no rule prohibiting him from interviewing a defense witness who was not a party and who was not represented by counsel. The trial court could find no prejudice to defendant and overruled the motion for mistrial. The record is indeed devoid of any evidence of prejudice to defendant as a result of the prosecutor's conversation with the witness. Mr. White was called to present reputation testimony regarding Mrs. McCool. Had the conduct of the prosecutor constituted error, that alone would not be grounds for reversal when the facts and circumstances demonstrate, as they do here, that the defendant suffered no harm. *State v. Walker*, 484 S.W.2d 284, 286[4–6] (Mo.1972).

The question whether it was improper for a prosecutor to interview defense witnesses was answered long ago in *State v. Weiners*, 4 Mo.App. 492, 496[4] (1877). There, the circuit attorney, when he learned about a defense witness, "caused Mr. Crum to be found at his residence, and had him in court upon its resumption of proceedings. In the meantime he had taken Crum into a jury-room, and in the presence of several witnesses asked him what would be the character of his testimony. * * * If it were made to appear that any intimidation or undue influence was brought to bear upon the witness Crum, we might be able to understand the point of the defendant's complaint. * * * We are ignorant of any rule which requires that a prosecuting attorney shall not be on speaking terms with the defendant's witnesses." Although it may have been advisable for the prosecutor to assure himself that Mr. White understood that he represented the state, no one suggests that he attempted to intimidate or influence the witness. No error having been committed, the motion for mistrial was properly denied.

Defendant also alleges that it was improper for the prosecutor to inquire into the matter of Mr. White's possible intoxication at the time he testified. The extent of cross-examination on collateral matters for the purpose of impeachment of a witness is largely within the trial court's discretion. *State v. Cox*, 352 S.W.2d 665, 673[25] (Mo.1961). See also *Chism v. Cowan*, 425 S.W.2d 942, 948[6, 7] (Mo.1967). It has been held that evidence of whether a witness had been drinking intoxicating liquor at the time of the occurrence is competent for the purpose of affecting the credibility of the witness. *Sanders v. Armour & Co. of Delaware*, 292 S.W. 443, 446[10] (Mo. App.1927). A witness' abnormality is a standard ground for impeachment and one form of abnormality is that which exists when one is under the influence of drugs or drink. If a witness is "under the influence" at the time of the occurrence or at the time

he testifies, this condition is provable, on cross or by extrinsic evidence, to impeach. McCormick, Law of Evidence § 45 (2d Ed. 1972). The intoxication of a witness at the time he testifies goes to his credibility. *Lomax v. State*, 248 Ark. 534, 452 S.W.2d 646, 649[6, 7] (1970). Furthermore, the witness admitted he had had a few beers and was under the influence of alcohol. The inquiry was properly permitted.

■ Defendant states in his next point that it was improper for the prosecutor to ask Mr. White why another person, one "Moon Mullins", whom White claimed as a source for reputation testimony, had not been called by defendant. The prosecutor merely asked the witness if he knew Mullins' whereabouts. The impropriety complained of did not occur.

■ Error is also urged in permitting the introduction into evidence of the victim's medical records describing the nature of her injury and the treatment administered. This portion of a hospital record is admissible if it tends to prove or disprove any fact in issue or to corroborate any relevant evidence. *State v. Jenkins*, 516 S.W.2d 522, 525[1, 2] (Mo.App.1974). The medical records were admissible as corroborative of the victim's testimony that her attacker struck her on the head with a gun. In addition, one issue in the case was whether the victim was robbed by force and violence as charged in the information. The exhibit was admissible to show the manner of the assault and the amount of force and violence employed. *State v. McRoberts*, 485 S.W.2d 70, 72[2] (Mo.1972).

■ Defendant's charge that it was prejudicial error for the prosecutor to refer to a stain on a coat sleeve as blood because there was no such evidence overlooks prior expert testimony to the effect that tests were run identifying the stain on the sleeve as human blood. Defendant contends that the testimony of defendant's brother identifying the green suit as that worn by defendant on the night of the incident was improper rebuttal because defendant had offered no evidence that it was not. This,

too, overlooks prior testimony, that of defendant's wife. She was shown the jacket and pants during cross-examination and asked if she recognized them. Her testimony implied that the suit was not her husband's because it did not have a name or label on the inside and was not as shiny as his green suit. The testimony of defendant's brother was presented in rebuttal. The scope of rebuttal testimony is largely within the discretion of the trial court. Unless a defendant's rights are prejudiced or the trial court abuses its discretion, a reviewing court will not reverse even though the testimony may not have been, in the strictest sense, proper rebuttal evidence. *State v. Kirk*, 510 S.W.2d 196, 199[4, 5] (Mo.App.1974). Defendant fails to demonstrate prejudice and none is disclosed by the record. The trial court therefore did not abuse its discretion.

■ The admission into evidence of a number of items seized at the time of defendant's arrest is challenged on the ground that the arrest was invalid for lack of probable cause. He refers us to *State v. Perry*, 499 S.W.2d 473, 475[2, 3] (Mo.1973) which recites that for an arrest to be valid, the arresting officer must be in possession of facts or knowledge that would lead a prudent man to believe that the suspect had committed a crime. Here, the arresting officer was notified by police radio of the attack upon Mrs. Green. The suspect was described as a white male, age 35 to 40, between 5'7" and 5'8", with black wavy hair and wearing a dark suit. The suspect's vehicle was described as a yellow or green truck with a white camper which overhung the cab. It had the name Sutton on it. The officer first observed the truck with "Sutton" on the side and shortly thereafter saw defendant, who fit Mrs. Green's description, approach it. The officer possessed sufficient information to establish probable cause to arrest. *See State v. Maxwell*, 502 S.W.2d 382, 386[1] (Mo.App.1973). His arrest was valid and the very limited search incident thereto was proper.

■ The next point arises from Mrs. Green's testimony, by deposition, that she

identified defendant at the scene of his arrest. The contention is that the confrontation was so impermissibly suggestive as to give rise to irreparable mis-identification, and therefore testimony of the identification should have been suppressed. Mrs. Green was originally called upon to identify the truck. Defendant was not taken into custody until she was on her way to the scene. She overheard on the police radio that a man had been arrested near the truck. The jury was informed, through Mrs. Green's deposition testimony, that she identified the truck and the man on that occasion. She also identified defendant in a lineup photograph, shown to her at the time of her deposition, as being the man who attacked her. Defendant contends that the confrontation was permeated by a suggestive atmosphere that rendered the identification unreliable. The police had not planned the confrontation when they asked Mrs. Green to come identify the truck since defendant was not yet in custody. When Mrs. Green arrived shortly after his arrest, it was simply common sense to determine as soon as possible whether he was the man they sought. *Grant v. State*, 446 S.W.2d 620, 621–2 (Mo.1969). The remarkable accuracy with which Mrs. Green was able to describe her assailant to the police directly contradicts the conclusion that the confrontation at the scene of arrest led to an irreparable mis-identification. The totality of the circumstances demonstrates no prejudice to defendant and the point is ruled against him.

Defendant attacks the in-court identification by Mrs. McCool on the ground that the lineup at which she first identified him was suggestive. Examination of the photographs of that lineup does not support defendant's charge.

Defendant in his pro se brief also challenges the sufficiency of the evidence to support the charge of robbery in that there was no evidence to prove defendant took Mrs. McCool's purse. The evidence disclosed that when defendant started hitting her with the pistol, Mrs. McCool had her purse. After she first recovered from her dazed condition while starting to get up on her knees, she noticed that her purse was gone and defendant had just left. No other person was in the area. The purse was discovered by a school boy a short distance away in his front yard. The jury could very well infer from these circumstances that defendant took Mrs. McCool's purse.

The judgment is affirmed.

McMILLIAN and KELLY, JJ., concur.