REYNOLDS v. STATE.

4441                                    200 S. W. 2d 806

Opinion delivered March 31, 1947.

*H. K. Toney* and *E. W. Brockman,* for appellant.

*Guy E. Williams,* Attorney General, and *Arnold Adams,* Assistant Attorney General, for appellee.

HOLT, J. Appellant, Tommy Reynolds, by information, was charged with the crime of murder in the first degree, for the unlawful killing of "Othel Lee Ashley by striking and beating the said Othel Lee Ashley over the head and body with his fists," on August 31, 1946. A jury found him guilty of involuntary manslaughter and assessed the maximum punishment of twelve months in the State penitentiary (§ 2994, Pope's Digest). From the judgment comes this appeal.

For reversal, appellant argues (1) insufficiency of the evidence, (2) error in instructions, and (3) improper argument by the prosecuting attorney.

1.

The deceased, Othel Ashley, was killed while engaged in a fight with appellant from blows inflicted from appellant's fist, on the night of August 31, 1946. The record discloses that Roy Cossey and Jim Dempsey, both intoxicated, were evicted from a picture show in Redfield, Arkansas, by the owner, Joe Smith, who was mayor of the town and also justice of the peace. Shortly thereafter, the difficulty was renewed by Cossey with Joe Smith in front of Smith's home, a short distance from the theater. Smith called a deputy sheriff to assist him in subduing Cossey and also deputized Othel Ashley, the deceased, to assist. It appears that Ashley had his arms around Cossey's neck and upon Cossey's complaining of being choked, Cossey's wife came up and managed to separate them. At this point, Mrs. Cossey testified that Ashley said: "Gertrude, I will slap hell out of you," and that appellant stepped between her and Ashley and told him not to hit her. Mr. Cossey was finally subdued and taken to the rear of Smith's home.

Vernon Oates, a witness for the State, gave his version of what thereafter transpired, in substance, as follows: "Tommy (meaning appellant) was there, yes. . . . A. He wanted to know if they were going to take Mr. Cossey and Mr. Dempsey to jail and Othel spoke up and said, 'anybody that got drunk ought to go to jail,' and Albert Reynolds made the remark, 'you don't have to break a man's neck taking him to jail,' and Othel said, 'I still say that anybody that gets drunk ought to go to jail,' and when Othel said that Tommy hit him. The first time he knocked him down then he got up, I guess half straightened up, and Tommy hit him again. Q. Then what happened? A. Then Othel fell and he never moved. Q. Was Othel Ashley doing anything to Tommy Reynolds? A. No. Q. Just prior to striking him? A. No, sir, not that I know of. . . . A. He never spoke to Tommy, no, sir. He was talking to Albert."

Another State's witness, Eugene H. Tucker, testified, (quoting from appellant's brief): "Tommy (appellant) and Albert came walking up the path, and Albert went to my left and Tommy went to my right, and he walked around there and hit him. Mr. Ashley was at the time standing by the fence. No one said anything or spoke a word. Mr. Ashley got up about straight and he hit him again and said, 'Stay there.' He wasn't hardly straight when Tommy hit him the second time. The first time he struck him on the chin and the second time on the neck."

S. E. South, an undertaker, testified that he examined the body of Othel Ashley and that his neck was broken.

Appellant testified that he struck Ashley in self-defense after Ashley had called him a vile name and was advancing toward him, and in appellant's own words: "A. Because when he walked over there I had seen him in fights before and I knew how he fought, and when he walked over there with doubled-up fists he was just fixing to hit me and he was a much bigger man than I was, and I didn't want him a holt of me so I hit him and I knocked him down, and he got back upon his feet in a

crouching position and come at me again and I hit him again.''

Appellant denied that he said ''stay down'' after striking Ashley the second time.

Whether the death of Ashley resulted from the unlawful acts of appellant as charged in the information, or whether it was justified, as appellant insists, on the grounds of self-defense, was clearly a question for the jury to determine.

It is our duty here to consider the evidence in the light most favorable to the State and the jury's verdict, and when so considered, if we find it substantial, we must affirm. *Higgins* v. *State,* 204 Ark. 233, 161 S. W. 2d 400.

The weight to be given the testimony and all reasonable inferences to be drawn therefrom were questions for the jury to determine. *Griffin* v. *State,* 210 Ark. 388, 196 S. W. 2d 484.

Here, the jury evidently found that appellant did not kill Othel Ashley in self-defense, as claimed, and we think there was substantial testimony to support their verdict.

### 2.

Appellant next objected to the following instructions given by the court: ''No. 11—The defendant in this case pleads self-defense in justification of his act in killing the deceased. Self-defense is a legal defense, and one which would entitle the defendant to an acquittal if you find from the evidence that he acted in self-defense at the time of the killing; and it need not appear, in order that he may plead self-defense, that the defendant was actually in danger of losing his life or of receiving great bodily harm at the hands of the deceased, but if you believe from the evidence in the case that the defendant, acting in good faith, and without fault or carelessness on his part, honestly believed, at the time he struck the deceased, that he was in danger of losing his life or of receiving some great bodily harm at the hands of the deceased, then he would be entitled to an acquittal, even though

you should further find that he was in no actual danger of losing his life or of receiving some great bodily harm at the hands of the deceased at the time he struck the deceased.''

''No. 12—If you believe from the evidence in the case that the defendant ,by accident, or misadventure, not intentionally, struck and killed Ashley, and that he had no evil design against him, he would not be guilty of unlawful homicide and you will acquit him unless you find from the evidence beyond a reasonable doubt that he killed the deceased either in the commission of an unlawful act, or in the commission of a lawful act without due caution and circumspection.''

And he argues that the following instruction, No. A, which appellant requested, should have been given by the court: ''If you believe from the evidence in this case that the defendant, acting without carelessness on his part, honestly believed that the deceased, Ashley, against whom defendant had no evil design, was about to make an unlawful assault on him, and that defendant, acting under such belief, struck the said Ashley with his fist, he would not be guilty of unlawful homicide, and you will acquit him.''

We cannot agree that any error appears when instructions No. 11 and No. 12 are read together. They fairly and clearly declared the law applicable to the facts disclosed by this record. *Slim and Shorty* v. *State,* 123 Ark. 583, 186 S. W. 308.

While Instruction A requested by the appellant was, we think, not incorrect, it was fully covered by the two instructions, *supra,* and there was no error in the court's refusal to give it since the court was not required to multiply instructions on any particular issue. *Wallin* v. *State,* 210 Ark. 616, 197 S. W. 2d 26.

### 3.

Finally, appellant says: ''The following argument by counsel for the State was prejudicial, to-wit: 'The defendant just wanted to impose his mean disposition

on the man he killed.' '' The record discloses that upon appellant's prompt objection to this argument, the trial court said: "The court can't pass on that, Mr. Brockman," whereupon appellant's exceptions were noted.

After considering all the testimony in this record, we cannot say that this statement of the prosecuting attorney was not a fair and reasonable deduction therefrom. It was but an expression of an opinion from the facts, and as was said by this court in *Maxey v. State*, 76 Ark. 276, 88 S. W. 1009: "Still, the facts upon which he predicated his opinion were before the jury, and, as sensible men, we must assume that they gave the opinion of the attorney as to these facts no more or greater consideration than the facts themselves justified." We are unable to see how these remarks could have prejudiced appellant's rights in the minds of sensible and fairminded jurors.

As said in *Lemuels v. State*, 113 Ark. 598, 166 S. W. 741: "The control of the argument was within the discretion of the court, and the judgment ought not to be reversed unless there was a manifest abuse of the court's discretion in that regard." We find no abuse of discretion here.

The judgment is affirmed.