COMER *v.* STATE.

4457                                                204 S. W. 2d 875

Opinion delivered October 13, 1947.

*Hugh Williamson,* for appellant.

*Guy E. Williams,* Attorney General and *Oscar E. Ellis,* Assistant Attorney General, for appellee.

Minor W. Millwee, Justice.    Bud Comer was charged by information with the crime of involuntary manslaughter in the killing of Arthur Robinson by striking and running over Robinson with a motor truck, which Comer was alleged to have driven without due caution and circumspection, and while in an intoxicated condition.  He was found guilty by a jury and his punishment fixed at one year in the penitentiary.

The first three assignments of error in the motion for a new trial challenge the sufficiency of the evidence to support the verdict.  The testimony of the State tends to show that on Saturday night, September 28, 1946, Comer and Robinson parked the latter's 1930 model truck alongside a filling station at Tupelo, Arkansas.  The tire on the left rear wheel had been removed and the truck was running on the rim.  Doyne Hall, who was near the filling station at the time, testified that Comer and Robinson were drinking and called him to the truck and gave him a drink from a "fifth of whiskey."  After further conversation and drinking, Robinson offered to take Hall home in the truck, but the latter advised him to leave the truck at the filling station because of the absence of the rear tire.  Robinson took this advice and left about the time the filling station closed.

Appellant then got in the truck and told Hall he was going to drive it home.  Hall advised against it, but appellant proceeded to get in the truck and drive over a narrow roadway leading from the rear of the filling station diagonally across the lot to a road east of the station.

Elmer Bagwell left the filling station "just ahead" of the truck.  A minute or two later Bagwell returned to the station and reported that somebody had been run over and he asked for a light.  Hall and Bagwell went to a point about 75 yards behind the station where they found Robinson lying on the ground near the narrow

roadway. A doctor was summoned and Robinson was removed to a hospital where he died three days later.

Other witnesses saw appellant leave the truck at another point in the town of Tupelo shortly after he left the filling station. The track made by the rim of the left rear wheel was easily traceable from the filling station to the place where Robinson was found, and on to the place where appellant abandoned the truck. Robinson was lying about three feet left of the lefthand side of the narrow roadway and, according to the track, the car swerved about three feet to the left of the road at this point and then back into the road. Blood was found in the sand about two feet to the right of the track made by the rim of the left rear wheel and there were footprints discernible in the sand along the left side of the roadway at this point.

The arresting officer found appellant on the porch of another's house in a drunken condition about two hours after he left the station. Although he was not questioned about the matter, appellant told the officer, ''I was not driving that truck.''

Ed Satterfield purchased the Robinson truck the following Monday and, while installing a steering gear, discovered human skin with beard in it on the radius rod housing under the car. He also found hair stuck to grease on the transmission. Robinson had skinned places about his head and body and was unconscious. The ribs on the right side of his chest were fractured and caved in. His death was attributed to the chest injury which produced a hemorrhage and traumatic pneumonia.

Appellant testified that he and Robinson went to Augusta earlier in the evening in Robinson's truck. They were drinking and purchased a bottle of whiskey at Augusta. On the return trip to Tupelo they had a ''flat'' on the left rear wheel and removed the tire. Robinson was then too drunk to drive, and appellant drove the car to the filling station in Tupelo. He did not remember taking a drink with Hall, but named two others with whom he did drink at the filling station. He and Robinson were good friends and he could not recall driving the

truck from the filling station, but did remember going to the house where the officer found him.

We think this evidence was sufficient to sustain the charge of involuntary manslaughter and that the jury was warranted in finding that the killing was the result of the reckless and careless driving of the truck by appellant while in an intoxicated condition.

The next contention of appellant is that the trial court erred in excluding statements made by the deceased to the witnesses, Charlie Jones and Nathan Gardner. These witnesses testified that they visited Robinson in the hospital on Sunday morning following the accident on Saturday night when the deceased asked them what the authorities were holding appellant for. When told that appellant was being held for running over deceased, the latter said: "Well, they ought to turn the s-- of a b---- loose." It is insisted that the statement was admissible as a dying declaration.

Jones testified that deceased did not say anything to indicate that he knew he was in a dying condition, but witness could tell he was in "pretty bad shape." Gardner testified that deceased was "pretty spirited and cheerful," but that he said, "I don't think I'll be here many days," before making the statement that his friend should be turned loose.

Appellant relies on the case of *Rhea* v. *State,* 104 Ark. 162, 147 S. W. 463, where this court said: "Dying declarations are admissible only in cases of homicide where the death of the person killed is the subject of the charge and the circumstances of the death are the subject of such declarations. It is well settled that such declarations must be made, not merely when the declarant is *in articulo mortis,* but he must be at the same time under the consciousness of impending death and without expectation or hope of recovery. It is not necessary, however, that the declarant should, at the time of making the declaration, state that he makes them under a sense of impending death; if it satisfactorily appears from the evidence in any mode that the declarations were made under that consciousness, then they are admissible. This

may be shown directly by the express language of the declarant; it may also be inferred from his wounded condition and evident danger, from expressions or statements made to him or in his hearing by physicians or others in attendance, from his manner and conduct and other circumstances shown in the case.''

Applying these principles to the case at bar, we conclude there was no error in refusing to admit Robinson's statement as a dying declaration. Whether the statement attributed to the deceased was made under a sense of impending death, and without hope of recovery, was a preliminary question of fact for the trial judge in determining admissibility. It was also the court's duty to determine whether the statement of Robinson related to the facts or circumstances of his death, or amounted to a mere expression of opinion or belief. The trial court was warranted in finding that appellant failed to make a satisfactory showing that the statement of deceased was made under consciousness of impending death without expectation of recovery. Nor can it be said that the subject of the declaration, i. e., that appellant should be released, would throw any light on the circumstances of Robinson's death.

It is finally contended that there was error in the giving of instruction No. 6. The effect of this instruction was to tell the jury that voluntary drunkenness was no defense to the charge of involuntary manslaughter, since it was unnecessary to find that a defendant had the specific intent to kill upon that charge. There was no error in the giving of this instruction. In *Bennett* v. *State,* 161 Ark. 496, 257 S. W. 372, this court said: ''The intent to commit the offense of involuntary manslaughter of which the appellant was convicted is not an ingredient of the crime. Involuntary manslaughter is, as its name implies, an involuntary killing done without any intent to kill, but in the commission of some unlawful act, or in the improper performance of some lawful act.'' The court then concluded that voluntary drunkenness was no defense to the crime. See, also, *Boyd* v. *State,* 161 Ark. 665, 255 S. W. 566.

Finding no error, the judgment is affirmed.