DOROTHY EVELYN LOMAX *v.* THE STATE OF ARKANSAS

5-5478                                              452 S. W. 2d 646

Opinion delivered April 13, 1970

*Harkness, Friedman & Kusin,* for appellant.

*Joe Purcell,* Attorney General; *Don Langston* and *Mike Wilson,* Asst. Attys. Gen., for appellee.

FRANK HOLT, Justice. Appellant was charged by information with the crime of murder in the first degree. A jury returned a verdict of guilty of voluntary manslaughter and assessed the appellant's punishment at seven years in the penitentiary. From the judgment upon that verdict comes this appeal. Although sixteen points of error are assigned for reversal, those that are argued can be grouped into three basic issues.

I

The name of the victim's treating physician was not included among the witnesses endorsed on the

information. The listing of the State's witnesses was in response to appellant's request. The attorney for the appellant was apprised, however, by the prosecuting attorney that the State intended to call this physician as a witness and that his identity had not as yet been determined. On the morning of the trial the State named the treating physician as a witness, in addition to those listed on the information. Appellant thereupon moved for a continuance based upon surprise. Appellant assigns as error the denial of this motion. We do not agree.

Appellant relies upon Ark. Stat. Ann. § 43-1004 (Repl. 1964) which requires upon an indictment the endorsement of the names of witnesses who appear before a grand jury. Assuming, without deciding, that this statute is applicable to an information, we have said that this requirement is merely directory and not mandatory. *Baker* v. *State,* 215 Ark. 851, 223 S. W. 2d 809 (1949); *Thomas* v. *State,* 161 Ark. 644, 257 S. W. 376 (1924); *Taylor* v. *State,* 186 Ark. 162, 52 S. W. 2d 961 (1932); *Steel* v. *State,* (Feb. 10, 1969) 436 S. W. 2d 800. The failure by the State to supply the defendant with the names of its witnesses "does not affect the validity of the trial unless the accused can show that he has been in some way misled to his prejudice and had no opportunity to meet the testimony given by the witness." *Thomas* v. *State, supra.* In the case at bar, when appellant made a request for the names of the State's witnesses prior to trial she was made aware by the prosecuting attorney that the treating physician, whose name was then unknown, would be called as a witness for the prosecution. Thus, the appellant had an equal "opportunity" with the State to determine prior to trial the identity of the treating physician and thereby "to meet [his] testimony" if necessary. It cannot be said therefore, that appellant was misled to her prejudice or surprise. *Norton* v. *State,* 237 Ark. 783, 376 S. W. 2d 267 (1964). Nor can we agree with appellant that the trial court abused its discretion in refusing to grant appellant's motion for a continuance based upon the doctor being a surprise witness. *Jackson* v. *State,*

245 Ark. 331, 432 S. W. 2d 876 (1968). In fact, the trial court offered to continue the trial of the case for a reasonable time to permit appellant to secure and present evidence to contradict the doctor's testimony. The offer was declined.

## II

Appellant next argues that the trial court erred in instructing the jury to disregard a statement made by the decedent to his treating physician in which statement the victim admitted provoking the incident that led to his death. The appellant argues that this statement was a dying declaration and, therefore, admissible as an exception to the hearsay rule. The victim of the alleged offense lived about a month before he succumbed to a gunshot wound. The physician testified that the victim was not dying at the time the statement was made, nor did it appear that he was under the impression that his death was imminent. Apprehension of immediate death is, of course, a condition of the admissibility of a dying declaration. We agree that the trial court was warranted in telling the jury that the appellant had not demonstrated that the deceased's statement was made in the belief of impending death and without hope of recovery. *Comer* v. *State,* 212 Ark. 66, 204 S. W. 2d 875 (1948); Wigmore, Vol. V, § 1451. Yet another answer to this contention is the absence of any objection to this ruling by the trial court. We have consistently required that an objection must be made, an exception saved and the point preserved or carried forward in a motion for a new trial. *Keese and Pilgreen* v. *State,* 223 Ark. 261, 265 S. W. 2d 542 (1954); *Randall* v. *State,* 239 Ark. 312, 389 S. W. 2d 229 (1965); *Parrott* v. *State,* (April 14, 1969) 439 S. W. 2d 924.

## III

Finally, it is urged that error was committed when the trial court ordered one of appellant's witnesses to be removed to a hospital for a blood test and thereafter permitted the doctor who administered this test to

testify as to the witness's state of intoxication while she was on the witness stand.

Appellant called Valdean Hamilton, who was present with appellant on the night of the shooting, as a witness. On cross-examination she was asked whether she had been drinking on the day of the trial. She answered that she had not. At that point the prosecuting attorney stated to the court: "Your honor, at this time, I would like for an officer to check this young lady." The court then asked the jury to rest for a moment and removed the proceedings into chambers. After an in-chambers proceeding in which the witness repeated her denial of drinking during the day and two officers of the court testified that the odor of alcohol about the witness was noticeable to them during the trial, the court ordered that she be taken to the hospital for a blood test. Two reasons motivated this order: first as a matter of possible impeachment and, second, as a possible basis for contempt of court. It is undisputed that the witness had drunk rather heavily the night before. After the tests were made, the examining doctor was permitted to testify as a rebuttal witness for the State. On direct examination he stated that her blood alcohol content was .056 per cent per weight which would indicate imbibing of alcohol within the past few hours. He further testified that this percentage constituted "a sub-clinical intoxication. It can be detected by sensitive tests, and by chemical tests, but usually they do not show—most of them do not show very much obvious change." On cross-examination he stated, with reference to this percentage, that: "It does reduce a person's inhibitions, and an inhibition would be his conscience. A person might tell a lie with less compunction with this amount of alcohol than normal."

If the extrinsic testimonial evidence by the doctor as to the witness's state of intoxication would have been offered to impeach her statement that she had had nothing to drink on the day she testified, such evidence would have been inadmissible because the issue of her intoxication is clearly collateral to the issues of the

case. On the other hand, the authorities are in agreement that extrinsic evidence may be introduced to show a witness's state of intoxication in order to demonstrate a defect in capacity to observe or recollect and, thereby, to attack generally the witness's credibility. McCormick, Law of Evidence, § 45; Wigmore, Vol. III, § 933; 98 C. J. S. Witnesses, § 461. Although there are no cases in this jurisdiction directly in point, the following is meaningfully analogous. In *Thrash* v. *State*, 146 Ark. 547, 226 S. W. 130 (1920), the court considered the admissibility of extrinsic evidence as to the witness's mental state at the time of testifying. We said:

> "If a party knows before the trial that a witness is incompetent on account of his mental condition, the objection must be made before the witness has given any testimony, and if the objection appears at the trial it must be interposed as soon as it becomes known. *Mell* v. *State*, 133 Ark. 197. It is admissible, however, in order to affect the credibility of the witness, to prove that he is subject to insane delusions or that his mind and memory have become impaired by disease or other causes."

It is said in Wigmore, *supra*, that: "Intoxication, if it is of such a degree as to deserve the name, involves a numbing of the faculties so as to affect the capacity to observe, to recollect, or to communicate; and is therefore admissible to impeach." Here, the doctor testified that the amount of alcohol found in the witness's blood might cause a person to "* * * tell a lie with less compunction * * * than normal." We are not here deciding that .056 per cent of alcohol per weight of blood is the demarcation point of permissible impeachment; we simply hold that the totality of the evidence presented as to this witness's state of intoxication justified an attack on her capacity to testify and on her general credibility.

Nor do we agree with the appellant that the removal of the proceedings into chambers constituted a comment by the court upon the evidence or that the

subsequent ordering of the blood test was prejudicial to her. Appellant directs us to *Lile* v. *State,* 186 Ark. 483, 54 S. W. 2d 293 (1932); *Crosby* v. *State,* 154 Ark. 20, 241 S. W. 380 (1922); and *Martin* v. *State,* 130 Ark. 442, 197 S. W. 861 (1917). In the first two cases, the respective trial judge ordered the arrest for perjury, in the presence of the jury, of a witness on the stand. This, in effect, was tantamount to a statement by the trial court to the jury that these witnesses were not to be believed. In the latter case, the trial judge ordered, again in the presence of the jury, the arrest of a witness based upon criminal admissions which he made during the course of his testimony. In the instant case, however, when the prosecuting attorney suggested that the witness be "checked," the trial judge made no comment except to recess the trial and then removed the proceedings into chambers and out of the presence of the jury. He thereby carefully avoided any undue prejudice to the defendant. This action certainly does not amount to a comment upon the evidence and was, in fact, done for appellant's benefit. Although the better procedure would have been to ask for an examination of the witness out of the hearing of the jury, we find no prejudicial result to the defendant inasmuch as it developed that the witness was properly subject to impeachment and the jury was admonished by the trial court to consider the doctor's testimony only as affecting the competency and credibility of the witness.

Affirmed.