Marcus Allen BUSH *v.* STATE of Arkansas

CR 08-430                                    288 S.W.3d 658

Supreme Court of Arkansas
Opinion delivered October 30, 2008

*William R. Simpson, Jr.*, Public Defender, and *Brenna Ryan*, Deputy Public Defender, by: *Clint Miller*, Deputy Public Defender, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Deborah Nolan Gore*, Ass't Att'y Gen., for appellee.

J IM GUNTER, Justice. Appellant was found guilty of capital murder and sentenced to life in prison without the possibility of parole. He now appeals his conviction, arguing that the State failed to sufficiently corroborate the testimony of a witness who was an alleged accomplice. Because this is a criminal appeal in which life imprisonment has been imposed, this court has jurisdiction under Arkansas Supreme Court Rule 1-2(a)(2). We affirm the judgment of conviction.

In an amended felony information filed May 11, 2007, appellant was charged with one count of capital murder and one count of aggravated robbery.[1] Appellant was accused of shooting and killing Patrick Edmondson on the night of April 1, 2006, while the two of them sat in Edmondson's truck on a street called Silver Court. Edmondson was found dead in the driver's seat of his truck and had been shot multiple times.

A jury trial was held over three days in December 2007. The pertinent testimony heard by the jury is as follows: Weldon Fisher testified that on the night of the murder he was visiting a friend who lived on Silver Court and that he noticed a truck identified as Edmondson's sitting under a light pole. As he walked into his friend's garage, he heard squealing tires and looked over his shoulder. Fisher then saw a muzzle flash inside the truck and heard several gunshots. He testified that the truck sped down the road and ran into a tree at the corner of Silver Court and Diamond Drive. Fisher then observed a black male in a white t-shirt step out of the passenger side of the truck and walk away. Fisher testified that his friend called 911 and that he left before the police arrived.

Tory Wade testified that he was with appellant and another friend named Mark on the night of the murder. Mark lives on

---

[1] The aggravated robbery charge was later nolle prossed.

Silver Court, and the three of them were outside the house. Wade testified that a white male in a truck pulled into the cul-de-sac on Silver Court, and appellant walked over to the truck. The man in the truck asked for cocaine, and appellant walked back to Wade and Mark and asked if they had any. They did not, and, according to Wade, appellant then grabbed a gun out of his car and walked back to the truck. Wade testified that he quickly left because "something crazy" was about to happen and he didn't want to be there. Wade testified that he saw appellant the next day and that appellant told him he had tried to rob the white guy but he had resisted. Wade testified that appellant then said he had shot the white guy from the passenger side of the truck. Wade testified that appellant was laughing about it. Wade admitted that he had previously lied to the police when he denied any knowledge of what happened.

Police officer testimony established that a black Beretta .380 semiautomatic was found in a drainage ditch in the southwest corner of Silver Court and Diamond Drive; that Edmondson's pickup truck was dusted for fingerprints, and three prints were lifted from the bed of the truck, the window, and a chrome bar, all on the passenger side of the truck; that two palm prints were lifted from the truck; that the fingerprints and palm prints matched those of appellant; that the prints appeared to be fresh; and that blood was found on the gun recovered at the scene. Other expert testimony established that shell casings found in the truck were fired from the gun recovered at the scene and that the blood found on the gun matched appellant's DNA.

Finally, Detective John White testified that he took a statement from appellant on June 6, 2006, in which appellant denied ever seeing the victim's truck or being around it; denied ever seeing the victim before; denied ever seeing the gun that was retrieved at the scene; and claimed he was at home when the shooting occurred.

At the close of the State's evidence, appellant moved for a directed verdict. Appellant asserted that Wade was an accomplice and that his testimony had not been sufficiently corroborated.[2] The State responded by arguing that there had been no evidence that Wade was an accomplice and, even if he was, the State had

---

[2] Appellant also argued that the State had not proven the requisite mens rea for capital murder or the lesser-included offenses, but this argument has been abandoned on appeal.

evidence of appellant's DNA on the murder weapon and his fingerprints on the victim's car, which sufficiently corroborated Wade's testimony. The court denied the motion and the renewed motions at the close of the defense's case and the state's rebuttal.

At appellant's request, the court instructed the jury, pursuant to AMI Criminal 2d 403, that "[i]t is contended that the witness, Tory Wade, was an accomplice" and that if the jury found he was an accomplice, appellant could not be convicted unless Wade's testimony was sufficiently corroborated. Without any indication that it found Wade was an accomplice, the jury returned a verdict of guilty. Appellant was given a sentence of life without parole, and he now appeals his conviction to this court.

On appeal, appellant assumes that Wade was an accomplice and argues that, because the State failed to sufficiently corroborate his testimony, the trial court erred in not granting his motion for directed verdict. This court treats a motion for directed verdict as a challenge to the sufficiency of the evidence. *Boyd v. State*, 369 Ark. 259, 253 S.W.3d 456 (2007). In reviewing a challenge to the sufficiency of the evidence, this court determines whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.* This court views the evidence in the light most favorable to the verdict, and only evidence supporting the verdict will be considered. *Id.*

In his argument, appellant asserts that the State's evidence is insufficient to corroborate Wade's testimony because it does not prove a "temporal connection" between appellant and the crime, and without proof of when appellant's fingerprints were left on the truck or when appellant's blood got on the gun, the jury had to speculate that appellant was present when the victim was shot. For an individual to be an accomplice, he must engage in one of the activities articulated in Arkansas Code Annotated section 5-2-403 (Repl. 2006).[3] It is the appellant's burden to prove that a witness is an accomplice whose testimony must be corroborated.

---

[3] Arkansas Code Annotated section 5-2-403(a) provides:

A person is an accomplice of another person in the commission of an offense if, with the purpose of promoting or facilitating the commission of an offense, the person:

(1) Solicits, advises, encourages, or coerces the other person to commit the offense;

*Cook v. State*, 350 Ark. 398, 86 S.W.3d 916 (2002). In this case, the instruction given to the jury allowed it to determine whether Wade was an accomplice, but we have no knowledge of whether the jury did in fact make such a determination. *See David v. State*, 295 Ark. 131, 748 S.W.2d 117 (1988).

Assuming that Wade was an accomplice, the State would be required to provide corroborating evidence "tending to connect the defendant . . . with the commission of the offense." Ark. Code Ann. § 16-89-111(e)(1)(A) (Repl. 2005). The evidence presented by the State showed that appellant's fingerprints and palm prints were found on the victim's truck; that appellant's blood was found on the gun used to shoot the victim; and that appellant denied ever seeing the victim's truck or being around it and denied ever seeing the gun that was retrieved at scene.[4] We find that this evidence is sufficient to connect appellant to the commission of the offense, and thus even assuming Wade was considered an accomplice, there is still sufficient evidence to support the jury's verdict. Pursuant to Arkansas Supreme Court Rule 4-3(h), the record in this case has been examined, and all objections, motions, and requests made by either party that were decided adversely to appellant have been reviewed. No prejudicial error has been found. Accordingly, we affirm.

Affirmed.

---

(2) Aids, agrees to aid, or attempts to aid the other person in planning or committing the offense; or

(3) Having a legal duty to prevent the commission of the offense, fails to make a proper effort to prevent the commission of the offense.

[4] This court has held that false statements to the police may constitute corroborating evidence. *MacKool v. State*, 365 Ark. 416, 231 S.W.3d 676 (2006).